# Use of General Agency Appropriations to Purchase Employee Business Cards

Nothing in the Omnibus Consolidated Appropriations Act of 1997 expressly provides for, or prohibits, the expenditure of appropriations of the General Services Administration for the purchase of employee business cards.

In the absence of a contrary provision or limitation in its appropriations act or other applicable legislation, GSA may lawfully obligate a general or lump-sum appropriation for the purchase of business cards for suitable mission-related use by GSA employees.

Depending upon the particular purpose for which they are to be used, GSA's purchases of business cards for its employees may be chargeable either to its limited appropriation for "reception and recreation expenses" or to its general appropriation.

August 11, 1997

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
GENERAL SERVICES ADMINISTRATION

This responds to your letter of April 7, 1997, seeking our opinion on the legality of obligating appropriations for the purchase of business cards to be used by employees of the General Services Administration ("GSA") for official purposes. We conclude that, in the absence of a specific appropriation for that purpose, GSA may lawfully obligate a general or lump-sum appropriation for the purchase of business cards for suitable mission-related use by GSA employees. Under GSA's current appropriations statute, business cards may be validly chargeable to its general "Policy and Operations" appropriation or to the allocation for "reception and representation" expenses within that appropriation, depending upon the purposes for which they are to be used. Because a limitation of $5,000 has been imposed upon appropriations that GSA may spend for "reception and representation" expenses, however, the purchase of employee business cards to be used for that purpose would be subject to the $5,000 limitation.

## I.

As stated in the memorandum accompanying your letter[1], executives of GSA's business lines have asked your office whether an executive branch agency such as GSA may expend its appropriated funds to provide business cards for suitable employees. For purposes of this opinion, we assume that the cards would be issued only for use in connection with the operations and official activities of GSA — for example, GSA employees might give the cards to representatives of commer-

[1] Memorandum for David J. Barram, Acting Administrator, General Services Administration, from Emily C. Hewitt, General Counsel, General Services Administration, *Re. The Purchase of Business Cards with Appropriated Funds for Agency Employees* (Apr. 7, 1997) ("GSA Memo").

150

cial or governmental entities with whom GSA does business or conducts operations to facilitate mission-related communications between those entities and GSA. We also understand that the business cards in question would generally contain the employee's name, his position at GSA, and his GSA phone number, mailing address, e-mail address, and fax number. GSA Memo at 3.

You cite and acknowledge several opinions of the Comptroller General concluding that, with the exception of appropriations earmarked for official "reception and representation" expenses, an agency's appropriated funds may not be used for the purchase of employee business cards. *E.g., Matter of Department of Agriculture — Purchase of Business Cards*, B–246616, 1992 WL 174420 (C.G. July 17, 1992); 41 Comp. Gen. 529 (1962). Notwithstanding those opinions, you have concluded "that the [GSA] Administrator has the authority to determine that there is a need for business cards for certain employees and that the expenditure of appropriated funds for this purpose is necessary." GSA Memo at 1.

In light of your concerns regarding the Comptroller General's opinions on this issue, and the potential liabilities of certifying officers for approving the expenditure of GSA funds for employee business cards, you have requested an opinion from this Office to resolve the matter.

At the outset, we confirm that the opinions and legal interpretations of the Comptroller General, although useful sources on appropriations matters, are not binding upon departments or agencies of the executive branch. *See Bowsher v. Synar*, 478 U.S. 714, 727–32 (1986); *Implementation of the Bid Protest Provisions of the Competition in Contracting Act*, 8 Op. O.L.C. 236, 246 (1984). In the event of a conflict between a legal opinion of the Attorney General and that of the Comptroller General, the opinion of the Attorney General is controlling for executive branch officers. *See Comptroller General's Authority to Relieve Disbursing and Certifying Officials from Liability*, 15 Op. O.L.C. 80, 84 n.5 (1991). Pursuant to 28 C.F.R. § 0.25(a) (1996), the Attorney General has delegated to this Office her authority to render legal advice to the various departments and agencies of the Federal Government.

We also note that the Comptroller General has previously referred to the regulations of the Joint Committee on Printing ("JCP") as providing an additional basis for disallowing the expenditure of an agency's appropriated funds for the printing of employee business cards. *See, e.g.,* 68 Comp. Gen. 467, 468 n.2 (1989). As a Joint Committee of the Congress, the JCP is part of the legislative branch. We therefore reiterate our previously stated view that regulations and requirements promulgated by the JCP are not binding upon executive branch agencies, including GSA. *See Involvement of the Government Printing Office in Executive Branch Printing and Duplicating*, 20 Op. O.L.C. 214, 214 (1996) (opining that, in light of the supervision exercised over the Government Printing Office ("GPO") by the JCP, "GPO's extensive control over executive branch printing is unconstitutional under the doctrine of separation of powers").

## II.

### A.

We first consider the current appropriations statute governing GSA expenditures to determine whether the question presented may be resolved on the basis of the existence vel non of a provision that, by its plain language, establishes whether GSA appropriations may or may not be used for the purchase of employee business cards. *See* Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104–208, § 101(f) ("Independent Agencies — General Services Administration"), 110 Stat. 3009, 3009–331 to 3009–338 (1996) ("GSA Appropriations Act"). We find nothing in the GSA Appropriations Act that explicitly provides for, or prohibits, the expenditure of GSA appropriations for the purchase of employee business cards or a category of printed materials or communications aids that would clearly encompass such cards.

### B.

The 1997 GSA Appropriations Act contains a section denominated "Policy and Operations," which appears to be the equivalent of a general expenses or lump-sum appropriation.[2] The GSA Policy and Operations appropriation provides as follows:

> For expenses authorized by law, not otherwise provided for, for Government-wide policy and oversight activities associated with asset management activities; utilization and donation of surplus personal property; transportation management activities; procurement and supply management activities; Government-wide and internal responsibilities relating to automated data management, telecommunications, information resources management, and related technology activities; utilization survey, deed compliance inspection, appraisal, environmental and cultural analysis, and land use planning functions pertaining to excess and surplus real property; agency-wide policy direction; Board of Contract Appeals; accounting, records management, and other support services incident to adjudication of Indian Tribal Claims by the United States Court of Federal Claims; services as authorized by 5 U.S.C.

---

[2] With respect to those GSA activities and operations that are allocable to the Federal Buildings Fund established pursuant to section 210(f) of the Federal Property and Administrative Services Act of 1949, ch. 288, 63 Stat. 377, (codified as amended at 40 U S C § 490(f) (1994)), the portion of the 1997 GSA Appropriations Act falling under the heading "Federal Buildings Fund" can also be considered in the same vein as a general appropriation available for "necessary expenses " *See* GSA Appropriations Act, § 101(f), 110 Stat at 3009–331.

> 3109; *and not to exceed $5,000 for official reception and represen-*
> *tation expenses*; $110,173,000..

*Id.* § 101(f), 110 Stat. at 3009–336 (emphasis added). We therefore consider whether the broadly-described expenditures authorized by this general appropria-- tion may properly encompass the purchase of business cards for appropriate agency employees.

**C.**

It is well recognized in both judicial and administrative precedents that federal agencies have considerable discretion in determining whether expenditures further the agency's authorized purposes and therefore constitute proper use of general or lump-sum appropriations.[3] As the Supreme Court observed in *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993):

> The allocation of funds from a lump-sum appropriation is another administrative decision traditionally regarded as committed to agency discretion. After all, the very point of a lump-sum appro- priation is to give an agency the capacity to adapt to changing cir- cumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way.

Similarly, in *International Union, United Auto., Aerospace & Agriculture Imple- ment Workers v. Donovan*, 746 F.2d 855, 861 (D.C. Cir. 1984), *cert. denied*, 474 U.S. 825 (1985), the court observed, ''[a] lump-sum appropriation leaves it to the recipient agency (as a matter of law, at least) to distribute the funds among some or all of the permissible objects as it see [*sic*] fit.''

This Office has applied a similarly flexible approach in addressing the legal propriety of agency expenditures of their general appropriations. Thus, in explaining the principles that governed our conclusion that the Justice Depart- ment's general appropriations could be used to settle certain claims against Depart- mental employees for actions taken within the scope of their employment, we stated:

> [O]ur conclusion was based on the basic rule that a general appro- priation may be used to pay any expense that is necessary or incident to the achievement of the underlying objectives for which the appropriation was made. General Accounting Office, *Principles of Federal Appropriations Law* 3–12 to 3–15 (1982). If the agency

---

[3] Other than appropriations acts themselves, the most pertinent statutory restriction upon an agency's use of its appropriations is 31 U.S C. § 1301(a) (1994), which simply provides, ''[a]ppropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law ''

believes that the expenditure bears a logical relationship to the objectives of the general appropriation, and will make a direct contribution to the agency's mission, the appropriation may be used[.]

*Indemnification of Department of Justice Employees*, 10 Op. O.L.C. 6, 8 (1986).
The Comptroller General's general approach to this issue is similar — and difficult to reconcile with its prior opinions on the permissibility of using agency appropriations for business cards. The General Accounting Office ("GAO") recognizes a three-part test for determining whether a general appropriation may be used for an unspecified expenditure as a "necessary expense" of the agency:

(1) The expenditure must bear a logical relationship to the appropriation sought to be charged. In other words, it must make a direct contribution to carrying out either a specific appropriation or an authorized agency function for which more general appropriations are available.
(2) The expenditure must not be prohibited by law.
(3) The expenditure must not be otherwise provided for, that is, it must not be an item that falls within the scope of some other appropriation or statutory funding scheme.

1 United States General Accounting Office, *Principles of Federal Appropriations Law* 4–16 (2d ed. 1991) (*"Principles"*). The Comptroller General has further explained his approach to this issue as follows:

When we review an expenditure with reference to its availability for the purpose at issue, the question is not whether we would have exercised that discretion in the same manner. Rather, the question is whether the expenditure falls within the agency's legitimate range of discretion or whether its relationship to an authorized purpose or function is so attenuated as to take it beyond that range.

*Implementation of Army Safety Program*, B–223608, 1988 WL 228374, at *6 (C.G. Dec. 19, 1988), *quoted in* 1 *Principles* at 4–17.
Considering the GAO's three-part test, we find no prohibition against the expenditure of GSA funds for items such as business cards. As discussed more fully below, however (see Part II.D, *infra*), the GSA Appropriations Act does limit to $5,000 GSA's general Policy and Operations appropriation for "reception and representation" ("R&R") expenses, a measure that "otherwise provides" for the purchase of business cards when they are to be used for purposes covered by that discrete function. On the other hand, business cards purchased for agency purposes *other than* R&R are not "otherwise provided for" within the meaning of the third part of the GAO test. That leaves the question of whether the purchase

of business cards can be said to make a direct contribution to carrying out an authorized GSA function for which its general appropriation is available.

We conclude that an agency head may reasonably determine that the appropriate use of business cards by agency employees who deal with outside organizations will further the agency's statutory mission and therefore constitutes a proper expenditure from its general appropriations. For example, we think it is beyond dispute that the distribution of business cards bearing the address, phone number, fax number, and e-mail address of active agency representatives will tend to facilitate prompt and efficient communications with the agency by the persons and organizations with whom it transacts agency business. In this respect, the function of the business card is similar to that of other well established government expenditures, such as agency letterhead stationery, fax coversheets, and agency telephone directories.

We have considered the Comptroller General opinions consistently asserting that the purchase of business cards is not a proper expenditure of general agency appropriations. *See, e.g.*, 68 Comp. Gen. 583 (1989); 68 Comp. Gen. 467 (1989); 41 Comp. Gen. 529 (1962). Those rulings are based to a large extent on the Comptroller General's view that business cards are items of a personal nature, primarily benefitting employees rather than serving the mission of the employing agency. In ruling that agency appropriations could not be used to purchase business cards for a Forest Service Public Affairs Officer, for example, the Comptroller General invoked and reapplied his prior decisions analogizing agency business cards to social "calling cards":

> [The public affairs officer], who is familiar with our earlier decisions, asserts that unlike calling cards, which are primarily for private use and private benefit, his "information" cards are "strictly for official business." In B–149151, July 20, 1962, we addressed a similar contention:
>
>> The cards in question, while denominated as "cards of introduction" . . . are actually calling . . . cards. The "cards of introduction" are calling cards issued to the foreign visiting student with his name added at the time of issuance of the card to him. *The card serves the purpose of introducing the bearer to anyone to whom the card is presented. This is a primary function of a calling card.* (emphasis added.)
>
> Likewise, [the officer's] "information cards serve the purpose of introducing him to those to whom he gives them and are there-

fore no different than calling cards. Accordingly, he may not be reimbursed for the cost of purchasing the cards."

68 Comp. Gen. at 469.

Whether or not these determinations were correct in the factual context in which they arose, they are not binding upon, nor necessarily relevant to, the spending decisions of other executive branch agencies. Rather, agency heads may make their own findings and determinations as to the purposes that would be served by the use of business cards by employees of their agency in today's governmental and business environment. Here, GSA has determined that its business cards would provide information to "enable[ ] the public, GSA's vendors, and GSA's agency customers to communicate more efficiently and effectively with GSA in the conduct of official business." GSA Memo at 3. We believe that constitutes a clearly permissible use of general agency appropriations.

## D.

Although we conclude that business cards used for appropriate agency-related purposes may be a proper expenditure of an agency's general appropriations, there remains the question of whether the purchase of such cards by GSA is governed or restricted by, or chargeable against, the specific limitation on R&R expenses.

The current GSA "Policy and Operations" appropriation includes language providing for "not to exceed $5,000 for official reception and representation expenses." *See* GSA Appropriations Act, § 101(f), 110 Stat. at 3009–336. This raises the question whether that specific provision is applicable to the purchase of business cards and, if so, whether the existence of the specific R&R limitation forecloses the use of more general appropriations.

Both this Office and the Comptroller General have applied the general principle that where a specific provision limits the amount that may be expended on a particular object or activity within a general appropriation, the agency's general appropriations cannot also be used for that same category of expenditure when the limits have been reached. We have applied that principle in concluding that such a limitation on the amount that can be used for R&R expenditures within a general appropriation precludes use of the general appropriation for R&R expenses when the R&R spending limits have been exhausted. Memorandum for Mike Kelly, Special Assistant to the Attorney General, from Mary C. Lawton, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Official Representation Fund* at 1 (Apr. 15, 1977) ("Kelly Memo"). The Comptroller General has endorsed and applied the same rule. *See* 1 *Principles* at 2–18 to 2–19; 20 Comp. Gen. 739 (1941).

Several opinions of the Comptroller General have stated that appropriations earmarked for R&R expenses may properly be used for the purchase of business cards for appropriate agency employees. For example, in ruling that the Depart-

ment of Agriculture could not use its general appropriations to purchase business cards for its public affairs officers, the Comptroller General opined that there must be "specific statutory authority" to justify such an expenditure. 68 Comp. Gen. 467, 468 (1989). As the opinion further explained:

> Such specific authority could be provided, for example, by a line-item agency appropriation for official reception and representation expenses. Calling or business cards are a legitimate means of "representation," and an agency head could determine that their use by certain officials or employees would be a necessary representation expense.

*Id.* at 468 n.1; *see also* 1 *Principles* at 4–200; *United States Trade Representative — Use of Reception and Representation Funds*, B–223678, 1989 WL 240750 (C.G. June 5, 1989).

This Office has also considered the proper use of R&R appropriations on a number of occasions. Referring to the Department of Justice's R&R appropriations, we observed that "the legislative history of the Fund indicates that one of its purposes is to pay the infrequent but necessary costs of official meetings with non-governmental organizations for which other appropriated funds are not available." Kelly Memo at 1. In another opinion, we concluded that the key consideration in determining whether an expenditure may be charged to the Department's R&R Fund is that "the Fund is intended to provide for infrequent, miscellaneous activities, usually (but not exclusively) involving 'outside [of the Department]' representatives who are of special interest to the Department," but which could not otherwise be funded from within existing appropriations. Memorandum for Kenneth E. Starr, Counselor to the Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Coffee Expenditure in Connection with Generator Meeting in United States v. Seymour Recycling Corp.* at 5 (Apr. 4, 1983) (alteration in original).

Considering all the foregoing, we conclude that agency business cards may be validly chargeable to either an R&R appropriation or to a general appropriation *depending upon the purpose for which they are to be used.*

If the business cards are to be used primarily as a means of facilitating necessary agency-related communications between the agency and those with whom it deals, both inside and outside the government — in the same way, for example, that letterhead stationery, fax coversheets, or agency telephone directories serve that purpose — we believe that they are properly chargeable to the general appropriation. This would particularly be the case with respect to agency employees who actually anticipate receiving agency-related telephone calls, correspondence, or other communications from those to whom they present the cards. We think an agency head's determination that such a use of business cards serves the agency's

lawful purposes is well within the substantial discretion allowed in this area. At the same time, we do not think that the use of business cards as a practical communications-facilitating tool is properly categorized along with meals, receptions, and gifts as a "reception and representation" expenditure.

On the other hand, we believe that some uses for which business cards might be employed would be properly, and exclusively, chargeable against an agency's limited R&R ceiling, if any. For example, the use of such cards merely to conform to social or business custom in a particular country, geographic area, or line of business fulfills a function more closely analogous to meals, receptions, and gifts than to such standard communications tools as letterhead stationery, fax coversheets, or agency phone directories.

We recognize that the uses for which particular agencies may employ business cards may not be precisely confined to one category or the other. Taking that into account, the appropriation account or category to which the purchase of business cards may be charged should depend upon the predominant purpose for which they are to be used. If the primary purpose is facilitating necessary agency-related communications, we believe they may properly be purchased with general appropriations. If, on the other hand, the primary purpose is to extend courtesies or conform to social or business custom in the context of agency-related activities, then the purchase of the cards should be charged as an R&R expense.

RICHARD L. SHIFFRIN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*